## MAHER v. KLEIN, et al.

Circuit Court, Dade County.

May 4, 1953 and February 16, 1954.

Warren, Klein, Lehrman, Shorenstein & Kline, Miami Beach, for Nathaniel J. Klein.

Dunn & Cleveland, Miami Beach, for Alfred and Rose Solomon.

Ward & Ward, Miami, for Sheldon and Rosalind Dobkin.

CHARLES A. CARROLL, Circuit Judge.

*May 4, 1953:* This cause came on to be heard on motion to dismiss filed on behalf of the defendants Sheldon and, Rosalind Dobkin, which is on the following three stated grounds—"(1) Because the complaint fails to state a cause of action upon which relief can be granted. (2) There is an improper joinder of parties-defendant in that there is no showing that the owners of the fee simple title to the properties against which these defendants have a mortgage lien are made parties-defendant. (3) There is no showing that the proper party-plaintiff is before the Court in that there is no showing that the plaintiff was the owner of the fee simple title to the property in question as of the time of the institution of this suit." Argument of counsel was heard thereon and the moving parties submitted a memorandum of law in support of the motion.

The suit was commenced by the plaintiff in January 1953 for a decree cancelling and declaring void certain notes, including a note and mortgage made in 1951 to certain persons and by them assigned and transferred to the Dobkins in 1952. The bill alleges that all defendants were residents of Florida, but later an affidavit was filed showing the Dobkins to be residents of Penn-

sylvania, and they were then served by an order for publication issued March 17, 1953, returnable April 20, 1953. Their motion to dismiss was filed April 17, 1953. Counsel for the Dobkins argues that jurisdiction could not be obtained over them by substituted service, by publication, for the purpose of cancelling the note and mortgage or having them declared void for the violation of usury laws of the state of Florida, as alleged and contended for by the plaintiff.

In argument, and in the memorandum submitted, counsel for said defendants made a showing that the action could not be in rem as to the Dobkins, so as to justify service by publication, because there was no res in this state on which to operate. The point there is that the Dobkins, as owners or holders of the note and mortgage in question, were the owners of an intangible asset the situs of which was their own domicile—Pennsylvania. That is correct, and that might have been the basis of action by the court quashing the service upon them *if an appropriate motion for that had been filed.*

Under rule 33 of the Florida equity rules it is provided that the following claims or defenses may be filed by motion—(1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim or defense upon which relief can be granted, and (7) failure to join indispensable parties.

It will be noted that the above listed grounds for such a motion include the ground of "lack of jurisdiction over the person," but it is further noted that the grounds stated in the Dobkins' motion to dismiss filed in this case does not contain that ground as to lack of jurisdiction over them, but that their motion does include the ground of failure to state a claim on which relief can be granted, and two other grounds, *all three of which go to the merits.*

Under the second paragraph of sub-section (b) of equity rule 33, it is shown that pleading to the merits or including grounds going to the merits in such a motion will amount to a general appearance.

So here, although defendants argue that the case is not one in which service by publication upon them was justified, they filed a motion which failed to set up that ground, and which contains grounds going to the merits of the action.

*February 16, 1954:* This cause came on for trial before the court, and the court heard testimony adduced on behalf of the parties and arguments of counsel, and has considered briefs filed, whereupon, it is ordered, adjudged and decreed as follows—(1) This court has jurisdiction of the parties and the subject matter of this suit. (2) Except as held to the contrary hereinbelow, the equities of the cause are with the defendants, and the plaintiff's prayer for an injunction to restrain enforcement of the note and mortgage described in the bill, and to have them canceled, is denied. (3) On the evidence, which was in conflict on some points, this court makes the following findings of fact and conclusions of law—

The note and second mortgage for $15,000 from Maher and wife to Solomon and wife was a six months' loan—not a year's loan.

It was usurious. In addition to $1,000 for expenses and fees paid by Maher, he paid interest of over 20% per annum. The lenders held out $1,500 interest, reducing the amount Maher received to $13,500. Thus the interest charged and paid on the six months' loan was at a rate of about 22% per annum.

The defendant Nathaniel J. Klein and Mr. Lehrman, for the law firm of which they were members, acted as attorneys for the Solomons.

In June 1952, at maturity, Maher could have sat back and asserted the usury and been required to pay only $10,500, being the $13,500 he received less double the $1,500 interest paid.

Instead, he permitted or "obtained" an "extension" for another six months. This extension kept the roof from falling in on the deal.

Being usurious at the inception, the simple extension (without returning the interest, or reducing the loan accordingly) would leave the loan with the continuing taint of usury, even without any new or additional interest being charged. Carter v. Leon Loan & Finance Co. (Fla.), 146 So. 664; Westman v. Dye (Cal.), 4 P. 2d 134; Taylor v. Budd (Cal.), 18 P. 2d 333; Foskin v. Laessig (St. Louis Ct. of App.), 32 S. W. 2d 768, citing Guinn v. Security State Bank of Shawnee (Okla.), 176 P. 898, holding that once a contract is usurious it remains usurious always "as long as its original existence continues"; and see 22 R.C.L. 250; 55 Am. Jur. 390.

The purpose of the extension was to place the loan in good standing so as to give time to sell it to a "bona fide purchaser" before maturity; or rather not after maturity. This is evident because Solomon wanted out, at maturity in June 1952, and he so announced promptly upon extending, at that time.

Though the sale of the note and mortgage was not completed until weeks after the maturity date and extension (which were about the same time), it appears to have been agreed on earlier. So, the note and mortgage were sold, either before maturity or after extension.

Solomon charged and received $1,500 additional interest for the six months' extension of the note from June 10 to December 10, 1952. Maher did not have it, so Solomon's lawyer, Mr. Klein, put it up for Maher.

Solomon's said lawyers located and interested a former client, Mr. Goodis, in the purchase of the extended note and mortgage. Mr. Goodis acted for his son-in-law and daughter, the defendants Dobkin. He talked to Dobkin about it and explained the transaction to him, the amount and the discount. The price was $13,500. Goodis put the money up with Mr. Lehrman, whose firm held it and later paid it over to Solomon (with the $1,500 added by Mr. Klein). Dobkin later repaid Goodis for half, Goodis giving or lending him the other half. The lawyers' advice on the validity of the loan and the mortgage title was given to Mr. Goodis, and the lawyers closed for him, (see page 8 of Mr. Klein's answer where it is averred about the closing awaiting continuation of the abstract, etc.). In spite of the denials by Goodis and the attorneys that they were his attorneys, it is abundantly clear that said attorneys acted as agents of Goodis and the Dobkins in the deal by which the note and mortgage were sold, and that they performed certain legal services for him in that connection.

Those lawyers, who also were Solomon's lawyers, knew of the usury in the loan. Those facts were learned by them in connection with the same general transaction in which Goodis was involved. They did not inform Goodis. It was to Solomon's interest that they not do so.

The attorneys' knowledge of the usurious character of the note and mortgage was imputed to Goodis, and through him to the Dobkins. Thus, Goodis and the Dobkins had constructive notice, *but not actual notice.* 5 Am. Jur. 302, et seq.

Moreover, Goodis was agent for the Dobkins, and they in turn are charged with such notice as he had. 8 Am. Jur. 160.

Returning to the defendant attorney Klein, he received from Maher, at the time of the extension, a six months' note to himself for $1,000 (with no interest provided for). His answer explains that by saying he asked Maher for a $1,000 note instead of for the $1,500 he had advanced because his firm had received $500 in fees from Maher when the loan was made. The evidence indicated that the broker, who had also received about a $500 fee at the start, returned it to Klein to reimburse him in part for this advance. In any event, it is held that the $1,500 in question amounted to interest paid on the Solomon loan for the extended six months' period; that it was not paid by Maher, but by Klein as a volunteer; that to Maher it represents only an obligation to pay $1,000 further interest on a usurious note, and that he is relieved of payment of interest therein under the law; and the counterclaim of the defendant Klein is denied and dismissed.

The mortgage note in the hands of the Dobkins, as assignees or endorsees, is enforceable for the face amount of the principal, but not as to any interest (the only interest provided for is 10% per annum after maturity, which means, as extended, after December 10, 1952).

The plaintiff prevails in the suit, as to said interest after maturity, because (a) the obligation was usurious (22%), (b) the holders had constructive notice, imputed to them from agents and attorneys, and (c) under F.S. 687.04 (first clause) such interest is forfeited.

I hold, however, that the second clause or part of section 687.04, for forfeiture of double the amount of interest paid will not apply to a "bona fide endorsee or transferee of negotiable paper purchased before maturity, unless the usurious character should appear upon its face, or that the said endorsee or transferee shall have had actual notice of the same before the purchase of such paper."

Summarized, that means that the first part of the statute relating to forfeiture of usurious interest provided for (but not paid) is within the general rule and law as to imputed notice or constructive notice being the equivalent of actual notice, but that the second part of the statute, for forfeiture of *double* the amount of usurious interest *paid,* is subject to a proviso (affecting only that part) which restricts that severe penalty (as to otherwise valid

endorsees) to those who took with *actual notice* of the usury—and the Dobkins had only constructive notice, and did not have actual notice thereof.

Such costs as there are in this cause are charged against defendants.